<div style="text-align:right">DUNLAP<br>v.<br>HUNDLY.</div>

---

## LEDBETTER v. LEDBETTER.

A son cannot recover from the succession of his mother any compensation for services rendered by him during his minority, as an overseer on an estate belonging to the community, in the absence of proof of any promise of payment by the head of the community; nor will an acknowledgment of his claim made by the mother, after the death of the father, be binding on her, or on her heirs. *Per Curiam:* For the services rendered by the son during the minority there could be no debt, and the acknowledgment of a debt which had no existence, is not binding on the mother or her heirs.

APPEAL from the Court of Probates of Carroll, *Harris*, J. This suit was brought to recover $4,500, the half of plaintiff's wages as overseer for nine years, at $1,000 a year, for services rendered on a plantation owned in community by the defendant, plaintiff's mother, and her late husband. The petition states that the community property had been divided between the defendant and the heirs of her deceased husband, and that the defendant expressly assumed to pay the plaintiff one half of his wages, to wit, the sum sued for; that he has in vain demanded payment, &c, The defendant pleaded to the jurisdiction of the court, and a general denial. She died pending the suit, and the

<div style="margin-left: left">LEDBETTER<br>v.<br>LEDBETTER.</div>

case was transferred to the Court of Probates, *James Ledbetter*, administrator of the deceased, appeared to defend the suit, and filed his answer, adopting the original answer.

From the evidence, it appears that the defendant repeatedly acknowledged plaintiff's claim.

There was judgment in favor of the plaintiff for $2,416 66, that is, the half of his wages, from the date of his majority in March, 1832, to 1836. From this judgment the plaintiff appealed.

*Prentiss* and *Finney*. for the appellant. It is contended that the original defendant, the mother of the plaintiff, was entitled to his services until the age of majority, and therefore her promise was *nudum pactum*. By what law or code of laws is the mother entitled to the services of her child during his minority? In the absence of any law on the subject, we should rather think the mother was bound to educate the child according to her position, and that it was her duty to do so, instead of having a right to subdue him to hard toil, and thus deprive him of all opportunity of improvement. According to the roman law, the father had a right to the acqusitions of his son except the *peculium castrense;* but in the time of Justinian the law was changed, and it was ordered that the proceeds of the son's labor should be entirely his own, reserving the usufruct thereof to the father in certain cases. Vide 2 Domat., Eng. Ed. 644. By the spanish law, the proceeds of the son's labor belonged to the son. 1 Moreau & Carleton's Partidas, 558. Partida 4, title 17, law 5. Neither by the roman nor the spanish law had the mother any right to the labor of her child. Our Code is silent as to the right of either father or mother to the labor of the child, and until this case we have never heard of such a pretension. By the common law, the father was entitled to the labor and services of his child; and this principle of the common law, we presume, suggested his defence to the counsel of the defendant. But at common law the mother had no such right. 1 Black. Comm. 453. 4 Binney, 487. Nor are we aware of any law or code of laws that gives the mother the right to the services of her child. At common law, if a father relinquish to his child the proceeds of his labor, the son is absolutely entitled to the same even against the father's creditors. 12 Mass. 375. 6 Conn. 547. 5 Verm. 556. So also at common law, if the father receive the proceeds of the son's labor, and in consideration thereof make any promise to the son, the consideration is good in law to support the promise. 12 Mass. 375. And there can be no doubt that even if the father or mother be entitled to the labor of a minor child, and yet agrees to pay the child for his services, the receipt of benefit from the child's labor, in connection with a concurrent promise of remuneration, will impose a natural obligation on the parent that will support any subsequent promise. La. Code, 1750, 1751.

We have argued this question as though it were properly presented by the record, but are satisfied, that, even if the défence be a good one, it should have been specially pleaded, and that evidence in the record cannot cure the want of a plea. It is one of those unconscientious defences which, like prescription must be pleaded, and, however patent upon the record, the court will not supply.

*Selby*, for the defendant.

The judgment of the court was pronounced by

ROST, J. The plaintiff claims from his mother, as common in acquêts and gains with the heirs of her deceased husband, the sum of $4,500, for one half of his services as overseer on a plantation, for the period of nine years, during part of which he was a minor. The petition alleges, and it is proved, that, in the act of partition between the heirs and the defendant, and at divers times since, the said defendant acknowledged the claim to be due. The defendant filed a general denial, and the plea of prescription. After issue joined she died, and the suit was removed the court of Probates, and revived against her administrator. The court below allowed the plaintiff the wages claimed by him, from the time he became of age, and he has appealed.

There is no error in the judgment. The father of the plaintiff was living during his minority and owed him no reward for services rendered till he became of age, if any such services were ever rendered, which is not shown. The plaintiff shows no promise from the head and master of the community, and his pretended legal rights are incompatible with the paternal power. " Quando filius de mandato patris negociatur, neque hoc casu aliquod salarium debebitur filio." Gregorio Lopez, on the law 5, tit. 17, Partida 4.

For the services rendered during minority there could be no debt, and the acknowledgment of an obligation which had no existence is not binding upon the defendant, or her legal representatives.

The judgment is affirmed with costs in the court below, the plaintiff and appellant paying the costs of this appeal.